IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENDRICK H. INGRAM, SR., #R70446    )
)
      Plaintiff,    )
)
      v.    )      Case No. 20-cv-1313-RJD
)
LORI CUNNINGHAM and LORI    )
JACKMAN,    )
)
      Defendants.    )

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motions for Summary Judgment (Docs. 98-103).   Plaintiff filed Responses (Docs. 106 and 107) and Defendant Jackman filed a Reply (Doc. 110).   As explained further, Defendants' Motions are GRANTED.

## BACKGROUND

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. §1983.   He brings an Eighth Amendment deliberate indifference claim against Defendants Jackman and Cunningham, alleging they abruptly halted his prescription for Culturelle probiotics at Lawrence Correctional Center ("Lawrence") on February 12, 2020 even though his prescription did not expire until July 12, 2020.   He also brings state law negligence/medical malpractice claims against them.   Plaintiff's Complaint alleges that Defendant Cunningham was the health care unit administrator at Lawrence and alleges that Defendant Jackman was the pharmacist.

## MATERIAL FACTS

Plaintiff was incarcerated at Lawrence from November 9, 2016 until September 22, 2021. Doc. 99-1, p. 13.   In March 2019, Dr. Pittman (not a defendant) prescribed Culturelle probiotics and Flagyl to him for a condition called "hematochezia" involving blood in his stool.   *Id*., pp, 50-52, 133.   He noticed that these medications relieved his acid reflux symptoms.   *Id*, p. 54.   He received boxes with 120 Culturelle pills every month; he would take 4-8 pills a day.   *Id*., p. 58. However, some months, he did not receive all 120 Culturelle pills.   *Id*., pp. 64, 91-92.

To receive his medications at Lawrence, Plaintiff would walk to the health care unit or a nurse would come to his wing and give him the boxes.   *Id*., p. 42.   Plaintiff would then sign a form titled "Issuable Medication Pick-up Form" that listed the medication he was receiving.   *Id*., p. 43.

At Lawrence, "non-formulary" medications must be approved by Wexford Health [1] Corporate Pharmacy Services.   Doc. 99-2, ¶7.   Dr. Pittman completed the "Wexford Non-Formulary Drug Request" form in March, August, and October 2019 for Plaintiff's Culturelle pills. *Id*., ¶¶8, 9, 10.   Those requests were approved for Plaintiff to receive Culturelle through December 2019. *Id*.   Plaintiff's pharmacy records reflect that Dr. Pittman completed a "Nutritional Supplement Request" for Plaintiff to receive a 90-day supply of Culturelle on January 21, 2020. Doc. 99-4, p. 20.   Doc. 99-2, ¶11.   A note on the request form states "Approve x 30 days at this time. Currently on antibiotics.   Please evaluate for continued need."   *Id*.

On January 27, 2020, Plaintiff received 120 Culturelle pills.   Doc. 99-1, pp. 66-67; Doc. 99-3, p. 49.   He did not receive his monthly supply of Culturelle in either February or March.

---

[1] Wexford Health Sources, Inc. is a private company that contracts with the IDOC to provide medical care to inmates.

Doc. 99-1, p. 71.   Plaintiff signed two "Issuable Medication Pick-up" forms in February that showed he received various medications (none of them Culturelle); on one of those forms, Plaintiff wrote "I need my Culturelle (4 boxes!)."   Doc. 99-3, p.50.   On another, he wrote "Culturelle is needed"; someone wrote "ordered" next to Plaintiff's handwriting.   *Id.*, p. 51.

In his Complaint, Plaintiff alleged that his Culturelle prescription was discontinued on 2/12/2020.   *Id.*, p. 72; Doc. 1, p. 8.   Plaintiff does not recall why he alleged that; a nurse may have told him it was discontinued on that date.   Doc. 99-1, p. 72.   On February 23, 2020, a nurse told Plaintiff "there's only three people…that ha[ve]…[the]ability to withhold medications": the health care unit administrator, the pharmacist, and the physician.   *Id.*, p. 76, 150-51.   The nurse told Plaintiff to write those three individuals about his Culturelle prescription.   *Id.*, p. 150. Plaintiff's medical records reflect that Dr. Pittman discontinued his Culturelle prescription on March 13, 2020.   Doc. 99-2, ¶12; Doc. 102-3.

Lori Jackman is not a pharmacist.   Doc. 99-2, ¶3.   She worked as the medication room assistant at Lawrence during all relevant times.   *Id.*, ¶2.   As the medication room assistant, she had the following job duties:

> I receive prescription orders placed by the medical provider, log the prescription order, and fax it to Boswell Pharmacy for processing. Once the medication is received from Boswell Pharmacy at Lawrence, I document the receipt of the medication and prepare the medication to be distributed to the patient.   In my role, I sort medications, bring them to the medication room, and then the nursing staff issues the medications to the patients.

*Id.*, ¶4.   Defendant Jackman did not receive the Issuable Medication Pick-up forms or review them.   *Id.*, ¶5.   The forms were placed in the patient's chart after he received his medication. *Id.*, ¶6.   Defendant Jackman reviewed Plaintiff's Issuable Medication Pick-up Forms from February 2020 and testified through affidavit that her signature is not on them.   *Id.*, ¶6.

Plaintiff never met Lori Jackman.   Doc. 99-1, p. 32.   Until he received Defendant Jackman's discovery responses, he did not know that her job title was "medication room assistant." *Id.*, p. 35.   Plaintiff has no knowledge of her job responsibilities as a medication room assistant or whether she has any discretion to determine if a medication is medically necessary.   *Id.*, p. 36. He addressed two letters to a pharmacist, then gave one to the nurse and put the other letter in the sick call box in his wing.   *Id.*, pp. 38-39.   The nurse told him that she either gave the letter to Defendant Jackman or placed it on her desk.   *Id.*   In the letters, he asked why his medication was discontinued.   *Id.*, p. 47.   Defendant Jackman never responded.   *Id.*, p. 36.

Plaintiff believed that Lori Cunningham was the "boss of the health care unit."   *Id.*, p. 118. In December 2019, he wrote her a letter about how he had been "shorted" all of his Culturelle pills. *Id.*, p. 125.   He has no evidence that Defendant Cunningham received the letter.   *Id.*   He also wrote her a letter after the Culturelle prescription was discontinued, but he has no evidence that she received that letter.   *Id.*, p. 126.   On March 22, 2020, Plaintiff submitted a grievance to his counselor at Lawrence, stating that he was in "desperate need of Culturelle capsules."   Doc. 1, p. 12; Doc. 99-1, p. 84.   Plaintiff's counselor forwarded the grievance to Defendant Cunningham, who responded that the Culturelle prescription had been discontinued by a physician on 3/13/2020. *Id.*; Doc. 99-1, pp. 156, 163.

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).   The moving party bears the initial burden of demonstrating the lack of any genuine issue of material

fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Eighth Amendment Claim

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones."  *Brown v. Osmundson*, 38 F. 4th 545, 559-60 (7th Cir. 2022) (internal citations omitted).  To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial" that shows (1) "he had an objectively serious medical need" (2) "which [the defendant] "[knew] of and disregard[ded] a substantial risk of harm."  *Id*. at 550.  Negligence or even recklessness does not constitute deliberate indifference; the defendant must have shown "something approaching a total unconcern for the prisoner's welfare in the face of serious risks."  *Id*.

In their summary judgment motions, Defendants do not contest the issue of whether Plaintiff had an objectively serious medical need.  They argue that none of the evidence suggests they knew of and disregarded a substantial risk of harm to Plaintiff.  The Court agrees.  The undisputed evidence indicates that after Plaintiff received his January 2020 Culturelle pills, Dr. Pittman no longer had approval from Wexford Health to continue Plaintiff's supply.  The record is silent as to why she no longer had approval, but no evidence indicates that Defendant

Cunningham or Jackman had any role in that process or decision.

Regarding Defendant Jackman, no evidence indicates that she was ever made aware that Plaintiff was experiencing discomfort because he did not receive his Culturelle. Plaintiff sent letters to the "pharmacist." Even if the Court infers that a nurse gave Defendant Jackman one of those letters, no evidence suggests that Defendant Jackman read the letter and construed it as a request that she (not a pharmacist) take action to obtain Plaintiff's Culturelle pills. Even if she had, the record reflects that Dr. Pittman was advised to evaluate whether Plaintiff needed to continue taking Culturelle, and she [Dr. Pittman] apparently decided that he did not. Similarly, nothing in the record indicates that Defendant Cunningham knew Plaintiff was not receiving Culturelle until after Dr. Pittman ordered the medication to be discontinued.

In some Eighth Amendment cases, a genuine issue of material fact may exist regarding whether a nurse or other staff member in the health care unit failed to advocate to a physician on behalf of an inmate. *Berry v. Peterman*, 604 F.3d 435, 442-43 (7th Cir. 2016). Here, Defendant Cunningham was presented with one grievance by Plaintiff in which he expressed a "desperate need" to take Culturelle. A jury could infer that Defendant Jackman also saw a similar correspondence that was either given to her by a nurse or placed on her desk.[2] To the extent that either Defendant failed to advocate on Plaintiff's behalf based on one written correspondence (and no other interactions with Plaintiff), such a failure constitutes-at most-an isolated instance of neglect, not an Eighth Amendment violation. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

---

[2] Plaintiff's testimony that a nurse told him she placed the letter on Defendant Jackman's desk or handed it to Defendant Jackman is probably hearsay, but the undersigned considers it here because the record does not contain enough information to definitively categorize the statement as hearsay.

In response to Defendants' summary judgment motions, Plaintiff argues that nurses told him that the pharmacist and the health care unit administrator could prevent inmates from getting their medications.   Even if the Court considers this statement (which appears to be inadmissible hearsay), nothing in the record suggests that Defendants Cunningham or Jackman (who is not a pharmacist) took any action to prevent Plaintiff from getting the Culturelle. Accordingly, no reasonable jury could find in favor of Defendants on Plaintiff's Eighth Amendment claim. Summary judgment is therefore appropriate in favor of Defendants.

### Medical Negligence Claim

Plaintiff was required to provide an affidavit or report pursuant to 735 ILCS §5/2-622, stating that there is a "reasonable and meritorious cause" for pursuing his claim against Defendants.   *Hahn v. Walsh*, 762 F.3d 617, (7th Cir. 2014); *Young v. United States*, 942 F.3d 349, 351-52 (7th Cir. 2019).   He has failed to do so, despite this case pending for nearly four years.   Defendants are therefore also entitled to summary judgment on Plaintiff's medical negligence claim.

### Conclusion

Defendants' Motions for Summary Judgment (Docs. 98 and 101) are GRANTED.   The Clerk of Court is directed to enter judgment in their favor, dismissing Plaintiff's claims against them with prejudice.

After Defendants filed their Motions for Summary Judgment, Plaintiff filed a Motion for Injunctive Relief (Doc. 114), asking the Court to order IDOC to transfer to him to a residential treatment unit because of threats made to him at Menard Correctional Center. Without otherwise considering the merits of the motion, the Court could not order Plaintiff's requested relief because it is not related to the claims in this case.   *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Regardless, the pending motion is now moot because summary judgment had been entered in Defendants' favor on all claims in this case.

**IT IS SO ORDERED.**

**DATED:   September 6, 2024**

s/   *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**